```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

```
IN THE MATTER OF THE            :   HONORABLE JOSEPH E. IRENAS
COMPLAINT OF CR BRONCO, LLC,    :
d/b/a CAPTAIN ROBBINS FISHING   :   CIVIL ACTION 09-3036 (JEI/JS)
CENTER AND JOHN SULLIVAN III    :
AS OWNER AND ALLEGED OWNER      :             OPINION
RESPECTIVELY, OF THE VESSEL     :
CAPTAIN ROBBINS, FOR            :
EXONERATION FROM OR             :
LIMITATION OF LIABILITY         :
```

**APPEARANCES:**

AVOLIO & HANLON, P.C.
By: Catherine B. Rinaldi, Esq.
Crossroads Corporate Center
3150 Brunswick Pike, Suite 120
Lawrenceville, New Jersey 08648
        Counsel for Thomas Elliott

MATTIONI, LTD.
By: Stephen J. Galati, Esq.
1316 Kings Highway
Swedesboro, New Jersey 08085
        Counsel for CR Bronco, LLC and John Sullivan III

**IRENAS**, Senior District Judge:

    This case arises out of injuries sustained by Thomas Elliott ("Elliott") when he fell off a stairway on a pier after disembarking the fishing vessel, Captain Robbins (the "Vessel"). CR Bronco, LLC, and John Sullivan III, as the Vessel owner and alleged Vessel owner respectively, filed the instant Complaint for Exoneration From or Limitation of Liability ("Complaint for Exoneration"). Elliott filed a Motion to Remand for lack of subject matter jurisdiction; however, since the Complaint for

1

Exoneration was initially filed in federal court and never removed from state court, Elliott's Motion will be construed as a Motion to Dismiss under 12(b)(1).

## I.

On July 11, 2007, Elliott was a passenger on the Vessel. Upon the Vessel's return from its chartered fishing trip, Elliott was injured when he fell off a stairway on the pier. The wooden stairway rose approximately five feet above the fixed pier onto which it was bolted and stood eight inches from the side of the Vessel. (*See* Response of CR Bronco, Exs 1-A, 1-E)  Elliott was walking backwards on the platform of the stairway when he fell off the landing to the pier below, sustaining injuries to his back, shoulder and elbow.

Elliott filed a complaint in the Superior Court of New Jersey, Law Division, Cape May County, on May 22, 2008, naming John Sullivan III and Captain Robbins Fishing Center as defendants.[1]  Elliott filed an Amended Complaint on May 12, 2009, adding CR Bronco, LLC, the owner of the Vessel, and Neil Robbins, the owner of the pier,[2] as defendants.  On June 22, 2009, CR Bronco and John Sullivan III filed a Complaint for Exoneration From or Limitation of Liability pursuant to 46 U.S.C. § 30501 et

---

[1] The case was transferred to Atlantic County on June 6, 2008.

[2] The terms "pier" and "dock" will be used interchangeably herein.

seq in this Court.  This Court then issued the requisite order restraining suits, *see* Fed. R. Civ. P. Supp. R. F(3), and stayed Elliott's state court suit.

On July 16, 2010, Elliott filed a Motion to Remand, asserting that the Court lacks subject matter jurisdiction. Since the Complaint for Exoneration was initially filed in this Court and never removed from state court, the Court will construe Elliott's Motion as a Motion to Dismiss under 12(b)(1).

## II.

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for lack of subject matter jurisdiction.  Rule 12(b)(1) motions may be based upon a complaint's face or its underlying facts.  *Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). "A facial attack questions the sufficiency of the pleading, and in reviewing a facial attack, a trial court accepts the allegations in the complaint as true."  *Pittman v. Metuchen Police Dept.*, No. 08-2373, 2009 WL 3207854, *1 (D.N.J. Sept. 29, 2009).  A factual attack permits the court to consider conflicting evidence that may bear on its jurisdiction.  *Id.*  "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of

jurisdictional claims." *Carpet Group Int'l v. Oriental Rug Importers Ass'n Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When resolving the factual challenge, the court may consider materials beyond the pleadings, and plaintiff bears the ultimate burden of proving jurisdiction. *Med. Soc'y of N.J. v. Herr*, 191 F.Supp. 2d 574, 578 (D.N.J. 2002)(citing *Gould Electronics Inc. v. U.S.*, 220 F.3d 169, 176, 178 (3d Cir. 2000)).

### III.

Elliott argues that because the two-part location and connection test for admiralty jurisdiction cannot be satisfied, the Court lacks subject matter jurisdiction over the instant action.

A federal court's authority to hear cases in admiralty is embodied in the Constitution. *See* U.S. Const. Art III § 2. Pursuant to 28 U.S.C. § 1333, federal district courts are granted "original jurisdiction, exclusive of the courts of the States, of...any civil case of admiralty or maritime jurisdiction...." 28 U.S.C. § 1333(1). Traditionally, admiralty tort jurisdiction existed only when the tort occurred on navigable waters. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995). Seeking to end confusion over the unclear line between land and water, Congress passed the Extension of

Admiralty Jurisdiction Act, *Id.* at 532, which extended admiralty jurisdiction over "all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."  46 U.S.C. § 30101.

A party seeking to invoke admiralty jurisdiction in tort must satisfy a two-part test of location and connection with maritime activity.  *Grubart*, 513 U.S. at 534.  The location test examines "whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water."  *Id.* (citing 46 U.S.C. § 30101).  The connection test examines whether the incident has a "potentially disruptive effect on maritime commerce" and whether the general character of the activity giving rise to the incident bears a "substantial relationship to traditional maritime activity."  *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 363 (1990)).

**A.**

It is well established that maritime law encompasses injuries that occur on the gangway,[3] which is considered an extension of the vessel.  *See The Admiral Peoples*, 295 U.S. 649, 652 (1935); *White v. U.S.*, 53 F.3d 43, 46 (4th Cir. 1995); *Reyes v. Marine Enterprises, Inc.*, 494 F.2d 866, 870 (1st Cir. 1974).

---

[3]  The terms gangway and gangplank are used interchangeably herein.

However, admiralty jurisdiction does not extend to accidents occurring on piers or ramps running into the sea, which are considered extensions of land.  *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 206-07 (1971); *Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 360 (1969).

In determining if the location test is met in this case, the Court must determine if the stairway on which the injury occurred is the equivalent of a gangway for purposes of admiralty jurisdiction.

The Third Circuit has said that a gangway which is "necessarily used for embarking and disembarking" becomes "a basic appurtenance of the vessel, its means of access to the land."  *Sarauw v. Oceanic Navigation Corp.*, 655 F.2d 526, 528 (3d Cir. 1981).  Although this description suggests that a gangway is a "means of access to the land," it is not particularly instructive on distinguishing a pier from a gangway.  In seeking to draw this fine distinction, the Court will look to case law from other circuits since there is no other guidance in the Third Circuit.

The Fourth Circuit determined that an accident on a wooden platform bridging the gap between a gangway and a dock was within federal admiralty jurisdiction.  *White v. U.S.*, 53 F.3d 43, 47 (4th Cir. 1995).  The Fourth Circuit explained that "[a]s part of the means of ingress and egress, the platform upon which

6

[claimant] stepped from the gangway to the dock falls within the navigable waters of the United States for the purpose of determining the location of the tort in question." *Id.* The court, finding no reason to distinguish this case from *The Admiral Peoples* where a disembarking passenger was injured by falling off a gangway, explained that "[t]he mere fortuitous circumstance that [claimant's] injuries were suffered on the pier rather than on the gangplank platform does not remove the incident from navigable waters." *Id.*

In *Ellis v. Riverport Enterprises, Inc.*, the court concluded that an injury on a floating walkway that led to the dock where a houseboat was moored did not satisfy the location test. 957 F.Supp. 105, 107-08 (E.D. Ky. 1997). In reaching this conclusion, the court reasoned: "[A]s a matter of function, the walkway was an extension of the dock. Without doubt, the walkway was not a gangplank. It did not connect a vessel to Riverport's dock but rather connected Riverport's dock to the land." *Id.* at 107.

In *In the Matter of the Complaint of MLC Fishing Inc.*, the court held that a ramp leading to floating docks which must be traversed to reach the ship is not a gangway. 2010 WL 582570, at *2-3 (E.D.N.Y. Feb. 16, 2010). The court based its holding on the physical separation of the vessel from the ramp by the floating docks. *Id.* at *2.

Based on these cases the distinguishing features of a gangway are that it (1) serves the purpose of ingress and egress from the vessel, (2) is physically connected to the vessel, and (3) does not function as an extension of the dock.

In the instant case, the stairway has none of these features.  It was not physically connected to the Vessel.  It did not extend out over the water to connect the Vessel to the pier.  Although in proximity to the Vessel, the stairway was not an extension of the Vessel because of the eight inch gap separating it from the Vessel.  Instead, it functioned as a vertical extension of the pier to which it was permanently bolted.  Because of the physical separation from the Vessel, a passenger on the stairway has already completely disembarked the Vessel and is no longer on navigable waters.  Although a passenger on a plank connecting the vessel and the pier has not yet left the vessel, *see The Admiral Peoples*, 295 U.S. at 652, a passenger standing completely on the stairway separated from the Vessel by eight inches cannot be deemed to still be disembarking the Vessel.  Therefore, the Court concludes that Elliott's injury did not occur on navigable waters.

CR Bronco and Sullivan also argue that because Elliott's claim includes the assertion that they were negligent in providing a means of ingress and egress to the Vessel, this Court has admiralty jurisdiction notwithstanding the location of the

injury.  (Response of CR Bronco at 10)  The failure to provide a reasonably safe means of disembarking which causes injury to a passenger is a tort within admiralty jurisdiction.  *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 631-32 (1959).  However, the Court does not agree that the alleged negligence concerned a means of ingress and egress to the Vessel.  As discussed *supra*, the stairway is an extension of the pier and therefore not part of the Vessel.  A passenger standing on the stairway is on the pier and is no longer in the process of disembarking from the Vessel.  Thus, any alleged negligence regarding the stairway did not concern egress from the Vessel.[4]

---

[4] To the extent that CR Bronco and Sullivan argue more generally that an alleged wrong occurred on the Vessel, the Court does not find sufficient factual support to establish admiralty jurisdiction on this basis.  Elliott's complaint alleges negligent construction, renovation, and maintenance of the stairway, which are all wrongs occurring on the pier to which the stairway is bolted.  Elliott also alleges failure to warn, which is a wrong that could have occurred on the Vessel.  However, for this alleged wrong to satisfy the location test, it must be the cause of the injury.

In *Gutierrez v. Waterman Steamship Corp.*, while unloading a ship, a crew member spilled beans on the pier that a longshoreman later slipped on.  373 U.S. 206, 207 (1963).  The Supreme Court held that admiralty jurisdiction is satisfied where "it is alleged that the shipowner commits a tort while or before the ship is being unloaded, and the impact of which is felt ashore at a time and place not remote from the wrongful act."  *Id*. at 210; *see also Tullis,* 397 F.2d at 24 (finding that the "alleged negligence occurred immediately prior to and during debarkation."); *Gillmor v. Caribbean Cruise Line, LTD.*, 789 F.Supp. 488, 490 (D.P.R. 1992)(finding that the location test was satisfied because "even though the injury to the plaintiff occurred on the pier, the alleged negligence, namely the failure of the crew member to warn the passenger about the crime problem in the pier area, took place on board the vessel.").

Unlike the case law cited above where the alleged wrongful acts took place entirely on the Vessel, Elliott alleges multiple wrongs, all but one of which took place on the pier.  Sufficient facts have not been alleged to establish that Elliott's injury was caused by the

Because Elliott's injury did not occur on navigable waters and was not caused by a ship or other vessel on navigable waters, the location test for admiralty jurisdiction cannot be met.

**B.**

The connection test requires examination of the relationship of the wrong to traditional maritime activity.  A connection with maritime activity has been found in cases involving the collision of pleasure boats on navigable waters, *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 (1982); the storage of a vessel at a marina within navigable waters, *Sisson*, 497 U.S. at 367; damage by a vessel in navigable waters to an underwater structure, *Grubart*, 513 U.S. at 528; and the failure to provide a reasonably safe means of egress, *Tullis*, 397 F.2d at 23-24.

The Court does not find evidence of any substantial connection with maritime activity in this case.  Here, as discussed *supra*, the injury occurred on the pier, and the stairway was not a means of egress from the Vessel since a person standing on it had already completely disembarked from the Vessel.  Therefore, the underlying facts do not support a failure to provide a safe means of egress from the Vessel and the injuries resulting from alleged negligence regarding a stairway

---

alleged failure to warn and not the other alleged acts of negligence which occurred on the pier.  Therefore, CR Bronco and Sullivan have not met their burden of establishing that the location test for admiralty jurisdiction is met.

on a pier are not substantially related to a traditional maritime activity.

## IV.

For the reasons set forth above, the Court has no admiralty jurisdiction over the instant matter.  Consequently, Elliott's Motion to Dismiss will be granted for lack of subject matter jurisdiction.  The Court will issue an appropriate Order.

September 27, 2010

                                       s/Joseph E. Irenas  
                                       JOSEPH E. IRENAS  
                                       Senior United States District Judge